IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| STEPHEN M. COOK, | : | |
| | : | |
| Plaintiff, | : | 5:05-CV-250 (CAR) |
| | : | |
| vs. | : | |
| | : | |
| THE CITY OF JACKSON, GA, a municipal corporation et al, | : | |
| | : | |
| Defendants. | : | |

## ORDER

Currently before the Court is Defendants' Motion for Summary Judgment [Doc. 23]. For the reasons discussed below, the Court **GRANTS** Defendants' Motion.

### Factual Background

Plaintiff, Stephen M. Cook ("Plaintiff"), the Fire Chief for the City of Jackson ("City"), brought this § 1983 action against the City alleging that the City violated his Fourteenth Amendment procedural due process rights when it terminated him without adequate notice or a hearing. Construed in the light most favorable to Plaintiff, the record establishes the following facts. See <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 918, 918-919 (11th Cir. 1993) (stating that for summary judgment purposes, the court must view the facts in the light most favorable to the non-moving party and draw all favorable inferences in favor of that party).

Plaintiff began his employment as a firefighter with the City of Jackson in 1976. In 1987, Plaintiff left the City's employ to work for the State of Georgia as a fire investigator. When the State was on the verge of abolishing Plaintiff's division in 1991, he came back to the City of Jackson as the Assistant Chief of the Fire Department. Then, in 1992, Plaintiff was promoted to Fire Chief of the City.

Plaintiff's employment status (whether "at will" or "for cause") at the time the City re-hired him is unclear. Three years later, however, the City adopted a new City Charter[1] ("Charter"). The Charter provides that the City may terminate department heads, such as Plaintiff, only "for cause." (Compl., Ex. A, at 11.) Merely two days after the passage of the Charter, the City passed an ordinance adopting the City of Jackson Handbook of Personnel Policies ("Personnel Handbook"), which, contrary to the Charter, allows the City to dismiss "any employee of the City . . . *with or without cause*." (Compl., Ex. A, at 11 (emphasis added).)

Several days before the Personnel Handbook went into effect, the City distributed it to its employees, including Plaintiff. The City requested that the employees read the Handbook and sign an acknowledgment to that effect. Before signing the acknowledgment, Plaintiff attended a City Council ("Council") meeting where he voiced his concerns regarding his employment-at-will status. Shortly

---

[1] The parties have not provided the Court with the provisions of the Charter in effect at the time Plaintiff was re-hired.

thereafter, Plaintiff signed the acknowledgment, certifying that he read the Handbook and understood that "[his] employment is at will, for no specific period of time and may be terminated at any time by [him] or the city."  (Defs.' Ex. 1.)

Plaintiff's employment with the City was not without problems.  Plaintiff's job as the Fire Chief was two-fold; he was primarily a firefighter, but, as a department head, he was also a manager charged with oversight of fire personnel.  As a firefighter, Plaintiff often failed to use proper safety gear.  As a department head, Plaintiff often failed to exercise his supervisory power.

Disappointed with Plaintiff's job performance, in January 2004, the Mayor, along with members of the Council, met with Plaintiff to discuss his job performance.  During the meeting, Council members discussed six areas of particular concern, all related to Plaintiff's leadership skills.  At the end of the meeting, Plaintiff understood termination to be a possible consequence if he failed to implement the changes necessary to address the Council's concerns.  Thereafter, Plaintiff attempted to implement the changes.

His efforts were not, however, satisfactory to the Council.  Therefore, four months after the initial meeting, in May 2004, the Mayor once again requested Plaintiff's presence at a Council meeting.  Upon Plaintiff's arrival, the Mayor gave Plaintiff two options: resignation or involuntary termination.  Plaintiff, aware that City's decision resulted from his failure to fully resolve the concerns expressed to him in the previous meeting, explained that he tried to do everything he could, but that he was unable to fix

some of the problems highlighted by the Council.

Notwithstanding Plaintiff's explanation, the Council voted to terminate Plaintiff, but left open the option for Plaintiff to resign. Plaintiff requested time to consult legal counsel about his options. After being advised by counsel that he should not resign, Plaintiff's termination became effective. Believing any post-termination hearing to be futile, Plaintiff failed to request such. The Court will now turn to the merits of the parties' arguments.

## Discussion

**I. Summary Judgment Standard**

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp., 477 U.S. at 322. A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the

4

nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Maynard v. Williams, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. Celotex Corp., 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

**II. Analysis**

The Fourteenth Amendment protects individuals against the government's

deprivation of liberty or property without procedural due process. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). Plaintiff argues that the City deprived him of his procedural due process rights when it terminated his employment, in which he had a property interest, without adequate notice or a hearing. In analyzing violations of procedural due process in termination contexts, courts utilize a standard two-step analysis. See, e.g., Nicholson v. Gant, 816 F.2d 591, 597-598 (11th Cir. 1987). First, the court must determine whether a plaintiff possessed a property interest in his continued employment. Id. at 597. If so, then the court must determine whether the essential requirements of due process were satisfied. Id. at 598.

### A. Existence of a Property Interest

The relevant state law—here, Georgia law—determines whether a public employee, such as Plaintiff, has a property interest in his job. Roth, 408 U.S. at 577-78. Under Georgia law, a public employee possesses a protected property interest in his continued employment when his employer must have "cause" to terminate him. See DeClue v. City of Clayton, 540 S.E.2d 675, 677 (Ga. Ct. App. 2001). Conversely, a public employee has no property interest if the employer may discharge him "at will." Id. Thus, to evaluate the validity of Plaintiff's procedural due process claim, the Court must first determine whether Plaintiff was an "at will" or "for cause" employee.

Plaintiff contends that he was a "for cause" employee, and that the City Charter conclusively resolves the foregoing issue in his favor. The Charter, in relevant part,

6

states that department heads, such as Plaintiff, may be removed by the mayor, with council's confirmation, only "for cause."[2] (Compl., Ex. A, at 11.)  Although the Charter does not define "for cause," the Court is not at liberty to disregard this phrase or its legal significance.  See Moritz v. Orkin Exterminating Co., 450 S.E.2d 233, 234 (1994) (stating that a court must strive to "give meaning to each part of the statute and avoid constructions which render a portion of the statute mere surplusage." (internal citation omitted)); see also Garfield v. NDC Health Corp., 466 F.3d 1255, 1266 (11th Cir. 2006) (stating that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (internal citation omitted)).  Thus, the plain language of the Charter gives Plaintiff a property interest in his employment.  The Charter is not, however, the only document relevant to the Court's inquiry.

Shortly after passing the Charter, the City passed the Personnel Handbook.  Contrary to the "for cause" language in the Charter, the Personnel Handbook provides that the mayor may dismiss, with council's confirmation, any employee of the City "with or without cause" because "all employment with the City is at will and no right to continuation of employment exists."[3] (Compl., Ex. A, at 49.)  In light of the fact that this

---

[2] The cited portion reads, in part:  "As the chief executive of this city, the mayor shall: . . . (2) appoint and remove, for cause, with confirmation of appointment or removal by a majority of council members, all officers, department heads, and employees of the city except as otherwise provided in this charter." (Compl., Ex. A, at 11.)

[3] The cited portion reads:  "For good cause, the Mayor, Council or Department Head may demote or suspend any employee of the City of Jackson.  Because all employment with the City is at will and no right to continuation of employment exists, any employee of the City may be dismissed or laid off,

7

provision directly conflicts the provision of the City Charter, the Court must determine which of the two documents controls Plaintiff's employment status. See Curlee v. Mock Enters., 327 S.E.2d 736, 743 (Ga. Ct. App. 1985); see also Rectory Park, L.C. v. City of Delray Beach, 208 F. Supp. 2d 1320, 1329 (S.D. Fla. 2002) (stating that "[i]nterpretation of a statute or ordinance is a question of law and therefore may be determined by the court on a motion for summary judgment.").

After thorough analysis of the applicable law, the Court finds that the Charter controls the terms of Plaintiff's employment. Georgia law, as well as federal law interpreting Georgia law, unambiguously hold that, to the extent the provisions of an ordinance, such as the Personnel Handbook, conflict with those of a city charter, the charter prevails. Under O.C.G.A. § 36-35-3(a), the City has the power to adopt only "clearly reasonable ordinances, resolutions or regulations . . . which are not inconsistent with . . . any charter provision applicable thereto." Moreover, "[a]ny such charter provision shall remain in force and effect until amended or repealed." Id. 36-35-3(a). In short, "city ordinances which are inconsistent with a city charter are void." Waters v. Buckner, 699 F.Supp. 900, 903 (N.D. Ga. 1988); see also Ga. Branch, Associated Gen. Contractors of America, Inc. v. City of Atlanta, 321 S.E.2d 325, 327-328 (1984) (finding an ordinance, that was inconsistent with a charter, to be void). Because the Personnel

---

with or without cause, by the mayor, when such action is confirmed by a majority of the council members." (Compl., Ex. A, at 49.)

Handbook's employment "at-will" provision is inconsistent with the City Charter's "for cause" termination requirement, the City Charter's provision, which gives Plaintiff a property interest in his employment, prevails.

The City argues that, even if the Charter gave Plaintiff a property interest in his job, the subsequent passage of the Personnel Handbook implicitly amended the Charter, divesting Plaintiff of his interest. As a matter of law, however, the mere existence of a conflicting provision in a subsequently passed ordinance is insufficient to formally amend the City Charter. Preliminarily, the Court notes that, in the hierarchy of municipal law, a city charter is the city's constitution. See Phillips v. City of Atlanta, 77 S.E.2d 723, 727 (Ga. 1953) (stating that charters "confer and define powers and provide for machinery to operate the government."). Charters generally outline cities' boundaries, powers, and responsibilities. Given the preeminence of charters in municipal law, Georgia law specifies two methods[4] by which they may be modified. O.C.G.A. 36-35-3(b); see also Kemp v. City of Claxton, 496 S.E.2d 712, 715 (Ga. 1998). Because the City did not enact the Personnel Handbook ordinance pursuant to either one of the prescribed methods, the Court finds that the Personnel Handbook did not formally amend the City Charter.

---

[4] "[A] municipal corporation may . . . amend its charter by following either of the following procedures: (1) . . . by ordinances duly adopted at two regular consecutive meetings of the municipal governing authority, not less than seven nor more than 60 days apart . . .; or (2) . . . initiated by a petition, filed with the governing authority of the municipal corporation, containing . . the signatures of at least 25 percent of the electors registered to vote in the last general municipal election . . ." O.C.G.A. §§ 36-35-3(b).

In arguing that the Personnel Handbook amended the Charter, the City relies on DeClue v. City of Clayton, 540 S.E.2d 675 (Ga. Ct. App. 2000). In DeClue, the court held that a subsequently enacted personnel ordinance was sufficient to divest plaintiff of a property right created by an earlier personnel ordinance. Id. at 678. Essentially, the court concluded that, as between two documents of equal weight and kind, containing inconsistent provisions, the one enacted later in time controls. Here, however, the two documents relevant to the issue are not of equal weight. To amend a document that codifies the City's very existence, the City must show more than a mere inconsistency in a later-enacted document; it must be explicit about its intent to amend its charter, especially in light of Georgia statutory provisions specifically governing the amendment of charters. See O.C.G.A. 36-35-3(b). To conclude otherwise would undermine the Georgia legislature's recognition that stability in a City's governing document, such the Charter, is crucial because such documents establish the rules and principles by which a city is governed.[5] Having concluded that Plaintiff's "for cause" status entitled him to procedural due process, the Court will now examine the sufficiency of the process afforded to him.

**B. Due Process Requirements**

---

[5] Moreover, the Court notes that if an inconsistent ordinance was sufficient to amend the City Charter, then the rule invalidating city ordinances that conflict with a city charter, cited by the Court in its earlier analysis, would be superfluous.

The Supreme Court has held that the due process clause requires notice and some opportunity for a hearing appropriate to the nature of the case *before* the termination becomes effective. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 (1985). The pre-termination hearing "though necessary, need not be elaborate." Id. at 545. In short, "[t]he [ ] public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546.

Plaintiff first contends that the City failed to give him any notice prior to the meeting in which the City terminated him. The record indicates otherwise. In January 2004, at the initial meeting between the parties, the City outlined its concerns with Plaintiff's performance. (Pl.'s Dep. 33:10-33:21.) At the end of that meeting, he understood that he may lose his job if he failed to fix those problems. (Pl.'s Dep. 43:12-43:17.) Generally, the purpose of the notice requirement is to put a plaintiff on notice of the charges against him so that he may properly present his side of the story. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). Although four months elapsed between the notice and the termination hearing, at the termination meeting, Plaintiff was aware that his

11

termination stemmed from the list of concerns presented to him in January 2004. (Pl.'s Dep. 49:16-50:5.) The notice does not need to be "in great detail as long as it allows the employee the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges." McDaniels v. Flick, 59 F.3d 446, 457 (3rd Cir. 1995) (internal citations omitted). Here, Plaintiff knew exactly why he was summoned to the second meeting with Council, and ultimately, why he was terminated.

Plaintiff next contends that he did not have an opportunity to respond. The record, once again, indicates otherwise. Plaintiff admits that, after the Mayor asked him to resign, Plaintiff defended himself, telling the Council and the Mayor that he attempted to work on the issues brought to his attention in the January meeting, and that, in his opinion, "every one of [the issues] has been enforced except for one." (Pl.'s Dep. 49:16-49:21.) Only after the City afforded Plaintiff an opportunity to defend himself did it vote to terminate Plaintiff. The Court, therefore, finds that Plaintiff received adequate notice of the charges against him, and that the City gave Plaintiff an adequate opportunity to respond.

Even if the pre-termination proceedings were deficient, the Court finds that the availability of a post-termination state-court remedy bars Plaintiff's claim. Regardless of the pre-termination procedures offered to an employee, a deprivation of procedural due process "is not complete unless and until the [s]tate refuses to provide due

12

process." Zinermon v. Burch, 494 U.S. 113, 126 (1990); see also McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc) ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise.") In other words, if state courts, upon request, would provide an adequate remedy for the procedural deprivation Plaintiff claims to have suffered, then there is no federal procedural due process violation, even if the plaintiff failed to take advantage of the state remedy. Horton v. Bd. of County Comm'rs, 202 F.3d 1297, 1300 (11th Cir. 2000); see also McKinney, 20 F.3d at 1565. This rule "recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora . . . [such as] state courts before being subjected to a claim alleging a procedural due process violation." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000).

Georgia law entitles a party to seek a writ of mandamus when "no other specific legal remedy is available[,] and a party has a clear legal right to have a certain act performed." Cochran v. Collins, 253 F. Supp. 2d 1295, 1305 (N.D. Ga. 2003); see also O.C.G.A. § 9-6-20; Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000). The writ may be used to compel a governmental body, such as the City, to act in compliance with the law, "for instance, to require a governmental board to hold a hearing as provided by law." Cochran, 253 F. Supp. 2d, at 1305 (citing Acree v. Walls, 243 S.E.2d 489, 493 (Ga. 1978)); see also Cotton v. Jackson, 216 F.3d at 1332-1333 (holding that a writ of mandamus would be an adequate remedy to protect plaintiff's right to have a name-

13

clearing hearing). Thus, even if the City had deprived Plaintiff of procedural due process in the course of his termination meeting, Plaintiff was entitled to seek a writ of mandamus to require a new hearing in order to remedy this deprivation. Plaintiff's failure to take advantage of the available state-court remedy, however, bars his procedural due process claim.

## Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 23].

**SO ORDERED,** this 7th day of March, 2007.

S/ C. Ashley Royal  
C. ASHLEY ROYAL  
UNITED STATES DISTRICT JUDGE

**EHE/jab**